## DEMING INVESTMENT COMPANY v. JOE D. GIDDENS AND WIFE.

No. 4426.   Decided June 18, 1930.
(30 S. W., 2d Series, 287.)

*Read, Lowrance & Bates* and *Cockrell, McBride, O'Donnell & Hamilton,* and *Earl Bohannon,* for appellant.

The true test of usury is: Does the contract provide for the collection or payment of a greater amount of interest than is permitted to be collected under the statute at the legal rate for the full term of the loan, and this test applies whether the statutes under construction permit or prohibit the deduction or reservation of interest in advance.   Mills v. Johnson, 23 Texas, 309; Galveston & H. Inv. Co. v. Grymes, 94 Texas, 69; Seymour Opera House Co. v. Thurston, 45 S. W., 815; National Life Ins. Co. v. Donovan, 238 Ill., 283, 87 N. E., 356; Harvard v. Davis (Ga.), 89 N. E., 740; Danielson v. Mixson (S. C.), 95 S. E., 515; Cissna Loan Co. v. Galley, 87 Wash., 438, 151 Pac., 792; Am, Inv. Co. v. Roberts (N. M.), 218 Pac., 1037; Clement Mortgage Co. v. Johnston, 83 Okla., 153; Finnerty Inv. Co. v. Athey, 89 Okla., 284; Conservative Loan Co. v. Whittington, 120 Okla., 137; Metz v. Wynne, 79 Pac., 223; Taylor v. Buzard, 90 S. W., 126; Allen v. Dunn, 99 N. W., 680; Swanson v. Realization Corporation, 73 N. W., 165; Foster v. Pittman, 89 N. W., 763; Pierce v. Davy, 61 N. W., 92.

*W. F. Moore,* for appellees.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Certified question from the Honorable Court of Civil Appeals of the Fifth Supreme Judicial District of Texas, in an appeal from the district court of Dallas county.

The facts to be considered in determining the question certified, as gathered from the certificate of the Court of Civil Appeals, aided by uncontested statements in written arguments, may be briefly stated as follows:

Joe D. Giddens secured a loan of $13,000 from the Deming Investment Company in February, 1921. The loan was secured by a note, dated February 16, 1921, due January 1, 1931, for $12,000 with interest at the rate of six per cent per annum, as evidenced by the coupon notes attached, due on January 1st of each year, the first for $616 and the other nine for $720 each. By the terms of the note and coupons it was provided for the maturity date to be accelerated and advanced so as to mature the note on the non-payment of any interest coupon, and for interest to be computed after the note became due at the rate of ten per cent per annum. At the same time and as a part of the loan transaction, Giddens executed to the Investment Company a series of five notes, dated February 16, 1921, the remaining $1,000 of the principal of the loan being included in notes numbered 1 and 2, $500 being included in each of these two notes. Besides the $500 principal, note No. 1 of this series included the sum of $831.35, being for $1,331.35, due January 1, 1922, and note No. 2 included besides the $500 principal the sum of $810, being for $1,310, due January 1, 1923. Each of the remaining three notes was for $780, due respectively January 1, 1924, January 1, 1925, and January 1, 1926. Provision was made for the holder of the series of five notes to declare all due and payable at his election on default of payment of any note of the series, and after same matured interest was to run at the rate of ten per cent per annum.

The note for $12,000 with accrued interest according to its terms was secured by a first lien created by a deed of trust given by Giddens and wife on 600 acres of land in Red River county. The series of five notes was likewise secured by a second lien deed of trust on said 600 acres of land.

The series of five notes purported to represent commissions to the Investment Company for negotiating the loan, but the Court of Civil Appeals certifies that the evidence is deemed sufficient to support a finding of the district court that the Deming Investment Company was the lender of the money and that the charges for commissions must be treated as interest.

The $12,000 note was sold by the Deming Investment Company to the Rutland Trust Company some five months after the execution of the note. The first interest coupon on the $12,000 note and note No. 1 of the series of five notes were paid by Giddens in February, 1922. The

second coupon for $720 on the $12,000 note and note No. 2 of the series of five notes were not paid when due on January 1, 1923. The Deming Investment Company paid to the Rutland Trust Company the $720 coupon interest note after it was due. The Deming Investment Company, under its option, declared the three other series notes matured, after January 1, 1923, and sued Giddens and wife to recover $4,370 with ten per cent per annum interest thereon from January 1, 1923, said $4,370 representing the following items:

| | |
|---|---|
| Coupon on $12,000 note | $ 720.00 |
| Note No. 2 of Series | 1,310.00 |
| Note No. 3 of Series | 780.00 |
| Note No. 4 of Series | 780.00 |
| Note No. 5 of Series | 780.00 |
| | $4,370.00 |

The Investment Company also sought foreclosure of the deed of trust on the 600 acres of land subject to the first lien securing the $12,000 note.

Giddens and wife defended under a plea of usury and also sought to recover by cross action the statutory penalty which they claimed had accrued by reason of their payments of usurious interest.

The case was tried by the district court without a jury and judgment was rendered in favor of Giddens and wife, decreeing the contract was usurious, and awarding them a recovery on their cross action.

The Court of Civil Appeals, considering the contract valid, "if the question of usury is determined under the rule announced in the case of Seymour Opera House Company v. Thurston, 18 Tex. Civ. App., 417, 45 S. W., 815," and considering the contract usurious under the "rule announced in Shear Co. v. Hall (Texas Com. App.), 235 S. W., 195," certified the following question for the Supreme's Court's decision, viz:

"Is the contract entered into by the Deming Investment Company, the lender, with Joe D. Giddens, the borrower, one which stipulates a greater rate of interest than ten per cent per annum for the use of money during the time the use of the same by borrower was contemplated in the contract?"

The certified question was heretofore referred to Section B of the Commission of Appeals, who recommended in an opinion of Presiding Judge Short that the question be answered so as to adjudge the contract usurious. Judge Speer filed a memorandum of dissent concluding there could be no usury in the contract because the debtors could perform it by promptly paying each promised installment at maturity, such installments aggregating less than the principal and the highest legal rate of interest for the term of the loan. Having substantially the same question before the Supreme Court, on motion for rehearing in the case of Shropshire v.

Commerce Farm Credit Company, the case was withdrawn from the Commission and has been carefully argued to the Supreme Court.

The court has today determined that the loan in Shropshire's case, which cannot be differentiated in any material respect from that now before us in so far as the question of usury is concerned, was tainted with usury. The reasons given for holding the Shropshire loan usurious render it unnecessary for the court to write at length in answering this certified question. It suffices to say that the contracts with Giddens must be condemned under the principles enunciated in that opinion.

At the creditors' option, on default of Giddens and wife to pay their installments due on January 1, 1923, within two years from the date of the loan, Giddens and wife were bound to at once repay the entire unpaid principal, and the sum of $3,870 interest besides $1,641.35 already paid as interest, or $5,511.35 as interest on a loan of $13,000 for less than two years. A written contract stipulating for a rate of interest so greatly exceeding ten per cent per annum is denounced as void for the amount or value of the interest by the Texas Constitution and statutes.

As suggested in the certificate, it was intimated in the opinion of the Court of Civil Appeals in the case of Seymour Opera House Company v. Thurston, 18 Civ. App., 417, 45 S. W., 815, that a lender should not suffer for default of a borrower to meet promised installments on a loan though such default resulted, under the express terms of the loan contract, in making the borrower pay more than the sum of money borrowed with interest at the highest conventional rate. We have already pointed out that while writ of error was refused in that case, yet the above doctrine was clearly and positively repudiated by the Supreme Court as inconsistent with the terms of our statutes, within a short time after the writ of error was refused. Parks v. Lubbock (Tex. Civ. App.), 50 S. W., 467, id., 92 Texas, 637, 638, 51 S. W., 322.

The same question as to usury which arose in Parks v. Lubbock was again presented for determination in the case of Shear Company v. Hall. Hall and wife borrowed $1,800 from the Middlesex Banking Company. In conideration of this loan, Hall and wife gave the Banking Company their note dated April 27, 1914, due November 1, 1919, for $1,800, with 6½ per cent per annum interest "payable annually on principal until due, and ten per cent interest on principal and interest after due until paid," secured by a first lien deed of trust on 238 acres of land, containing a provision that on default in payment of any installment of interest "then all arrearages of interest shall at the election of the holder thereof become at once due and payable, such election to be made at any time after default and without notice." In consideration of the loan, Hall and wife also gave the Banking Company their note for $148.80 payable in installments as follows: $13.80 on November 1, 1914, and $27 on November 1st in each of the years 1915 to 1919 inclusive, and providing that if

default should be made in the payment of said indebtedness or any installment thereof when due then at the election of the legal owner and holder of said note the whole amount thereof should at once become due and payable. The note for $148.80 was secured by a second lien deed of trust on the 238 acres of land.

The Shear Company held an indebtedness against Hall and wife secured by lien on the 238 acres of land which was subordinate to the liens securing the notes to the Middlesex Banking Company.

The first installment of $13.80 on the note for $148.80 to the Banking Company was not paid when it matured on November 1, 1914, whereupon the holder declared the entire $148.80 due and caused the land to be sold under the second deed of trust, on April 6, 1915, by a substitute trustee. One Pettitt became purchase of the land at the trustee's sale and later conveyed the land to one Foreman.

The Shear Company sued Hall and wife, Foreman, Pettitt, and others to cancel the trustee's sale and to have the 238 acres of land sold in satisfaction of the liens thereon.

The ground of the Shear Company's suit to cancel the sale by the trustee is clearly set forth in that company's proposition under its first assignment of error in the Supreme Court as follows: "The only basis for the sale of the substitute trustee and for his deed thereunder being said debt of $148.80 which was entirely interest and being interest over the rate of ten per cent per annum the action of the substitute trustee in making the sale and executing the deed was void."

The district court denied any foreclosure against Foreman and Pettitt, adjudicating that the loan was free of usury, and that the trustee's sale was valid. The Court of Civil Appeals affirmed the judgment of the district court on the ground that "the principal note bearing interest at the rate of 6½ per cent per annum and the interest coupon $148.80 note being interest on the $1,800 loan at 1½ per cent interest per annum, the whole rate charged is 8 per cent per annum," citing as sustaining its action the case of Seymour Opera House Company v. Thurston, 18 Tex. Civ. App., 417, 45 S. W., 815; Shear Co. v. Hall (Tex. Civ. App.), 215 S. W., 567, 569.

The Supreme Court granted a writ of error to review these judgments and referred the case to Section A of the Commission of Appeals. Thus the case presented the question whether the acceleration clauses in the $148.80 note and in the deeds of trust entitled the creditor, at his election, to collect more for his loan than the principal with interest at the highest contract rate for the true term of the loan, as was held in Parks v. Lubbock, or whether the acceleration clauses provided mere penalties for defaults in meeting payments promised, as was suggested in Seymour Opera House Company v. Thurston.

The Commission of Appeals concluded that the contract was usurious,

but undertook to reconcile this conclusion with what was said in Judge Henry's opinion in Dugan v. Lewis, 79 Texas, 246, 14 S. W., 1024. Being unable to approve the Commission's reasoning but regarding the loan as usurious under the doctrine regarded as settled in Texas by the decision in Parks v. Lubbock, the Supreme Court ordered the judgment entered which the Commission had recommended reversing the judgments of the district court and of the Court of Civil Appeals, but the Supreme Court gave for its action the single reason that the trustee's sale was void because "the land was sold to pay a note given for interest on an usurious loan." Shear Co. v. Hall, 235 S. W., 195 to page 198.

The answer to the certified question is "Yes" because the written contracts shown by the certificate directly provide for a rate of interest exceeding ten per cent per annum on the loan for its detention subsequent to the borrower's default in payment of promised installments. Articles 5069, 5070, 5071, Revised Statutes; Shropshire v. Commerce Farm Credit Company, 120 Texas, 400, 30 S. W. (2d) 282, this day decided.